UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE EDWARD WALKER, et al., <br> Plaintiffs, <br> v. <br> DITECH FINANCIAL LLC, et al., <br> Defendants. | Case No. 16-cv-03084-KAW <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** <br> Re: Dkt. Nos. 21, 26 |

Plaintiffs Leslie Edward Walker and Elahe S. Walker bring this suit against Defendant Ditech Financial, LLC ("Ditech") and Residential Credit Solutions, Inc. ("RCS"), alleging violations of California Civil Code § 2923.6, violations of California Civil Code § 2924.17(b), slander of title, fraud, promissory estoppel, negligence and negligence per se, and violations of California's Unfair Competition Law ("UCL"). (Pls.' First Am. Compl., "FAC," Dkt. No. 14.) Pending before the Court are Defendants' motions to dismiss the complaint. (Ditech Mot., Dkt. No. 21; RCS Mot., Dkt. No. 26.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and VACATES the hearing currently set for October 6, 2016. Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS the motions, for the reasons set forth below.

## I. BACKGROUND

Plaintiffs Leslie Edward Walker and Elahe S. Walker have a personal residence located at 48 Tennis Club Drive, Danville, California ("Subject Property"). (FAC ¶ 1.) Plaintiffs received a loan from America's Wholesale Lender, secured by a deed of trust that was recorded on November 30, 2005. (FAC ¶ 17; RCS Req. for Judicial Not., "RJN," Dkt. No. 27, Exh. A.) Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as beneficiary, and CTC Real Estate

1  Services was listed as Trustee.  (*Id.*)

2  At some point, RCS became the loan servicer.  On December 13, 2012, an Assignment of
3  the Deed of Trust was recorded, in which MERS assigned and transferred its interest to the Deed
4  of Trust to The Bank of New York Mellon as trustee for CWalt, Inc., Alternative Loan Trust
5  2006-J3.[1]  (FAC ¶ 18.)  Plaintiff alleges this transfer is invalid because the mortgage trust stopped
6  accepting new loans as of April 1, 2006.  (FAC ¶ 20.)  On January 29, 2016, RCS, acting as agent
7  for The Bank of New York Mellon, recorded a Substitution of Trustee substituting Barrett, Daffin,
8  Frappier, Tredder & Weiss, LLP as trustee under the Deed of Trust.  (FAC ¶ 19.)

9  On February 4, 2016, Plaintiffs sent a "complete loan modification application" to RCS.
10  (FAC ¶ 25.)  On February 25, 2015, a Notice of Default was recorded, reflecting a past-due
11  balance of $266,560.58.  (FAC ¶ 26; RCS RJN, Exh. C.)  On March 7, RCS confirmed "that it had
12  received the complete loan modification sent by Plaintiffs on about February 4, 2016."  (FAC ¶
13  27.)  On March 15, 2016, Ditech informed Plaintiffs that it was the loan servicer, as of March 1,
14  2016.  (FAC ¶ 28.)  As of the filing of the FAC, Ditech has "maintained that it was evaluating
15  Plaintiff's loan modification application," and Plaintiffs are unaware of the status of the
16  application.  (FAC ¶¶ 29, 31.)

17  On June 6, 2016, Plaintiffs filed the instant lawsuit.  (Dkt. No. 1.)  After Ditech filed a
18  motion to dismiss, Plaintiffs filed the operative first amended complaint.  On August 3, 2016,
19  Ditech filed a motion to dismiss the first amended complaint, along with a request for judicial
20  notice.  (Ditech Mot.; Ditech Req. for Judicial Not., "RJN," Dkt. No. 22.)  On August 22, 2016,
21  RCS filed its motion to dismiss the first amended complaint, along with a request for judicial
22  notice.  (RCS Mot.; RCS RJN.)  On August 31, 2016, Plaintiffs filed an opposition to Ditech's
23  motion and request for judicial notice.  (Pls.' Opp'n to Ditech Mot., Dkt. No. 29; Pls.' Opp'n to
24  Ditech RJN, Dkt. No. 30.)  On September 6, 2016, Plaintiffs filed an opposition to RCS's motion
25  and request for judicial notice.  (Pls.' Opp'n to RCS Mot., Dkt. No. 31; Pls.' Opp'n to RCS RJN,
26  Dkt. No. 32.)  On September 7, 2016, Ditech filed its reply.  (Ditech Reply, Dkt. No. 33.)  On

---

[1] Plaintiffs assert RCS recorded the Assignment of the Deed of Trust, but the Assignment itself has no indication that RCS was involved in its recordation.  (*See* RCS RJN, Exh. B.)

1  September 13, 2016, RCS filed its reply.  (RCS Reply, Dkt. No. 36.)

## II. LEGAL STANDARD

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  A court may, therefore, take judicial notice of matters of public record.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

1   a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a

2   probability requirement, but it asks for more than a sheer possibility that a defendant has acted

3   unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's

4   liability, it stops short of the line between possibility and plausibility of entitlement to relief."

5   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

6   Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no

7   request to amend is made "unless it determines that the pleading could not possibly be cured by

8   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

9   omitted).

## III.   DISCUSSION

### A.   Request for Judicial Notice

12  Ditech asks that this Court take judicial notice of: (1) the Deed of Trust recorded on

13  November 30, 2005, (2) a second Deed of Trust recorded on November 30, 2005, (3) a third Deed

14  of Trust recorded on January 10, 2007, (4) an Assignment of Deed of Trust recorded on December

15  13, 2012, (5) a Substitution of Trustee and Full Reconveyance recorded on December 14, 2006,

16  (6) the Notice of Default and Election to Sell Under Deed of Trust recorded on February 25, 2016,

17  and (7) a Property Ownership Report dated June 13, 2016 regarding the subject property. As to

18  the last exhibit, Ditech requests that the Court take judicial notice of the fact that no additional

19  foreclosure notices have been recorded against the subject property since the February 25, 2016

20  Notice of Default. (Ditech RJN ¶ 7.)

21  RCS asks that this Court take judicial notice of: (1) the Deed of Trust recorded on

22  November 30, 2005, (2) the Assignment of Deed of Trust recorded on December 13, 2012, and (3)

23  the Notice of Default and Election to Sell Under Deed of Trust recorded on February 25, 2016.

24  Plaintiffs oppose Defendants' requests for judicial notice. Specifically, Plaintiffs object to

25  Ditech's Exhibits 4, 5, 6, and 7 and RCS's Exhibit 3 on the ground that they "contain information

26  which is in dispute and form the basis for Plaintiff's claims against" Defendants. (Plfs.' Opp'n to

27  Ditech RJN at 1-2; Pls.' Opp'n to RCS RJN at 2.)

28  Ditech's Exhibits 4, 5, and 6 and RCS's exhibit 3 are official records that have been

4

recorded with the Contra Costa County Recorder's Office. As such, they are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). That Plaintiffs dispute the accuracy of some of these documents does not mean that they are not authentic.

Ditech's Exhibit 7, however, lacks sufficient information to show that the document is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Accordingly, the Court GRANTS Ditech's request for judicial notice as to Exhibits 1 through 6, and DENIES the request as to Exhibit 7. RCS's request for judicial notice is GRANTED in its entirety.

**B. Motion to Dismiss**

**i. Violation of California Civil Code § 2923.6**

Plaintiff's first cause of action alleges a violation of California Civil Code § 2923.6, which prohibits dual tracking. Section 2923.6 provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending . . . until . . . the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired.

The statute further provides that "the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error." Cal. Civ. Code § 2923.6(d).

With respect to RCS, RCS argues that Plaintiff's claim against it is not ripe because RCS has not moved forward with foreclosure since the Notice of Default was filed, such as a notice of sale. (RCS Mot. at 5.) RCS also argues that Plaintiff's claim is not ripe because RCS is no longer servicing the loan, and thus cannot foreclose or be enjoined from foreclosing the property. (*Id.*) In the alternative, RCS contends that Plaintiff has failed to allege sufficient facts, such as when RCS actually received the application. (*Id.* at 7.) Plaintiffs respond that the claim is ripe because

5

a trustee's sale is "looming," and that they have adequately alleged that RCS recorded the notice of default after the "complete application was accepted." (Plfs.' Opp'n to RCS Mot. at 1-2.)

"The ripeness inquiry is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (internal quotations omitted). In making this determination, the Court considers "two factors: the fitness of the issues for judicial decision, and the hardship to the parties of withholding court consideration." *Id.* Here, the Court finds that the dispute is ripe. Plaintiffs allege that after they submitted their loan modification application, RCS recorded a Notice of Default, contrary to § 2923.6's prohibition. Thus, a theoretical dispute is not before the Court, especially when the recordation of the Notice of Default begins the foreclosure process. *See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 927 (2016) ("The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell."). The fact that RCS is no longer servicing the loan also does not make this claim theoretical, as RCS would still be liable for the actions it took while it was servicing the loan. Therefore, the Court rejects RCS's ripeness argument.

The Court agrees, however, that Plaintiffs have failed to allege adequate facts and therefore dismisses the first claim against RCS without prejudice. Plaintiffs allege that "[o]n about February 4, 2016, Plaintiffs sent a complete loan modification application for the Subject Loan to Defendant RCS based on its representation that it was servicing the loan on behalf of the beneficiary." (FAC ¶ 25.) Subsequently, "[o]n about March 7, 2016, Defendant RCS confirmed to Plaintiffs that it had received the complete loan modification application sent by Plaintiffs on about February 4, 2016." (FAC ¶ 27.) It is not clear from these allegations whether the phrase "on February 4, 2016" describes the date RCS received the loan modification application or describes the date the loan modification application was sent. Plaintiff must therefore make clear what date RCS stated it received the loan modification application, as this goes directly to when § 2923.6 would have prohibited RCS from recording the Notice of Default. Plaintiff must also specify when RCS or Ditech deemed the loan modification application complete, and what—if any—foreclosure activities occurred after that date.

Ditech, in turn, argues that Plaintiff's first claim against it should be dismissed because Plaintiffs do not allege any specific actions taken by Ditech after Ditech became the loan servicer on March 1, 2016. (Ditech Mot. at 4.) Plaintiffs oppose on the ground that they have alleged in their complaint that Ditech and RCS were agents of one another, and that they had a conspiracy to foreclose on Plaintiffs' home. (Plfs.' Opp'n to Ditech Mot. at 1-2.)

The Court agrees with Ditech that Plaintiffs have failed to allege any actions taken by Ditech that violate § 2923.6. The only specific action Plaintiffs allege took place after they submitted their loan modification application was the recordation of the Notice of Default by RCS, prior to Ditech servicing the loan. (FAC ¶¶ 26, 28.) Otherwise, Plaintiffs' only allegation regarding Ditech is that "DITECH represented to Plaintiffs that they were reviewing the loan modification application while proceeding with the foreclosure process," without specifying any actions actually taken by Ditech to foreclose on the property. (FAC ¶ 30.)

Further, Plaintiffs cannot impute liability on Ditech based on RCS's action by making conclusory allegations of agency. "[A]gency is either actual or ostensible." Cal. Civ. Code § 2298. Agency is actual when the "agent is really employed by the principal." Cal. Civ. Code § 2299. The key factor in determining whether an entity is an employer is "the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682-83 (9th Cir. 2009) (internal quotation omitted). Right to control "requires a comprehensive and immediate level of 'day-to-day' authority over employment decisions." *Id.* (internal quotation and modification omitted). "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. Here, the complaint contains no facts supporting either an actual or ostensible agency relationship. Plaintiffs simply allege that that "each of the Defendants was the actual and apparent agents of each of the remaining Defendants and, in doing the things herein alleged, was acting within the course and scope of their actual and apparent agency and with the knowledge, notification, consent and ratification of each of the other defendants." (FAC ¶ 14.) None of these allegations show that Ditech had a right to control RCS (or vice-versa), or that Ditech took actions

causing Plaintiffs to believe that RCS was acting as its agent. *See Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 852, 882-83 (N.D. Cal. 2010); *Varela v. Wells Fargo Home Mortg.*, No. C-12-3502 KAW, 2012 WL 6680261, at *6 (N.D. Cal. Dec. 21, 2012).

Similarly, Plaintiffs provide no facts in support of their conspiracy allegations. "Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy." *Davenport*, 725 F. Supp. 2d at 881. Plaintiffs again provide no facts, only alleging that Defendants "committed the above-described acts pursuant to an agreement by and between them to engineer a default and then sell Plaintiff's property," and that they "committed acts in furtherance of the conspiracy, and/or lent aid and encouragement to their co-conspirators." (FAC ¶ 15.)  These are conclusory statements and insufficient to allege conspiracy. *See Davenport*, 725 F. Supp. 2d at 881 (rejecting conspiracy claim where the plaintiff alleged that defendants "'knowingly and willfully conspired to conceal the fact that her loan would be securitized and, more broadly, to provide plaintiff with a loan she could not afford"); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1157 (rejecting conspiracy claim where Plaintiffs "general[ly] alleg[ed] that Defendants conspired together to enter a fraudulent sales scheme, the purpose of which was to inflate the appraisal process and to enter into an unfair loan so as to extract 'undisclosed compensation' from Plaintiffs" because there were "no specific factual allegation[s] to support the conclusory allegation that Defendants entered into a conspiracy").

Accordingly, Plaintiffs' first cause of action is dismissed without prejudice.

### ii. Recordation of Inaccurate Title Documents

Plaintiffs' second cause of action concerns a violation of § 2924.17(b), which states:

> Before recording or filing [a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer], a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including a borrower's loan status and loan information.

Plaintiffs' § 2924.17(b) claim primarily consists of a challenge to the Notice of Default recordation

and the assignments of the deed of trust, specifically the assignment to the Bank of New York Mellon. (*See* Plfs.' Opp'n to RCS Mot. at 3; FAC ¶¶ 20, 42.)

To the extent Plaintiffs' claim is based on the recordation of the Notice of Default, Plaintiffs' claim lacks the factual allegations identified above. With respect to the assignments claim, RCS argues that Plaintiffs lack standing to challenge the validity of the assignment. (RCS Mot. at 6.) In *Yvanova*, the California Supreme Court explained that "a borrower can generally raise no objection to assignment of the note and deed of trust" because "[a] promissory note is a negotiable instrument the lender may sell without notice to the borrower." 62 Cal. 4th at 927. "But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process." *Id.* at 927-28. But while "[a] foreclosure initiated by one with no authority to do so is wrongful," whether a wrongful foreclosure plaintiff can challenge the authority of a foreclosing party is dependent on if the assignment is void or voidable. *Id.* at 929, 939. A void contract lacks any legal effect, whereas a voidable transaction "is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." *Id.* at 929-30 (internal quotation omitted). Thus, a voidable transaction "may be declared void but is not void in itself," as it can still be ratified by the parties. *Id.* at 930.

Here, Plaintiffs allege that the assignment is not valid because the Bank of New York Mellon "could not have been the beneficiary of the Subject Loan as the mortgage trust had ceased accepting new loans as of April 1, 2006." (FAC ¶ 20.) In arguing this would void the assignment, Plaintiffs rely on *Glaski v. Bank of America*, 218 Cal. App. 4th 1079 (2013). There, the plaintiff argued that the deed of trust was transferred to a Securitized Trust after the trust's closing date. *Id.* at 1095-96. Because the trust was formed under New York law, the California Court of Appeal applied New York law, specifically New York Estates, Powers & Trusts Law § 7-2.4, which provides: "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." *See id.* at 1096. The Court of Appeal reasoned that reading the statute literally, because the Securitized Trust was created by a pooling and

9

1   servicing agreement that establishes a closing date after which the trust could no longer accept

2   loans, § 7-2.4 "provides a legal basis for concluding that the trustee's attempt to accept a loan after

3   the closing date would be *void* as an act in contravention of the trust document." *Id.* (emphasis

4   added). In so concluding, the Court of Appeal acknowledged that other courts had found that such

5   an action would be voidable. *Id.*

6   Most courts have rejected *Glaski*'s application of § 7-2.4.[2] In *Rajamin v. Deutsche Bank National Trust Co.*, the Second Circuit explained that "the weight of New York authority is contrary to plaintiffs' contention that any failure to comply with the terms of the [pooling and servicing agreement] rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law." 757 F.3d 79, 88 (2d Cir. 2014). Instead, "[u]nder New York law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries." *Id.*; *see also King v. Talbot*, 40 N.Y. 76, 90 (1869) ("The rule is perfectly well settled, that a *cestui que trust* is at liberty to elect to approve an unauthorized investment, and enjoy its profits, or to reject it at his option"); *Banares v. Wells Fargo Bank, N.A.*, No. C-13-4896 EMC, 2014 WL 985532, at *4 (N.D. Cal. Mar. 7, 2014) ("New York appellate courts in numerous instances found a trustee's acts outside its powers may be ratified, and that acts that may be ratified are 'voidable' rather than 'void'") (internal citations omitted). The Second Circuit specifically rejected *Glaski*'s holding, explaining: "[w]e are not aware of any New York appellate decision that has endorsed this interpretation of § 7-2.4." *Rajamin*, 757 F.3d at 90. Thus, the Second Circuit "conclude[d] that as unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf." *Id.*

23   Here, Plaintiffs have not alleged any information about the trust, such as whether the trust

24   was formed under New York law. Thus, *Glaski* and its application of New York law would not

25   apply. Even if Plaintiffs had alleged that the trust was formed under New York law, the Court

---

[2] *Yvanova* specifically did not address *Glaski*'s holding regarding whether allegations that a note and deed of trust were transferred into a trust after the trust's closing date constituted a void or voidable assignment. 62 Cal. 4th at 931.

United States District Court
Northern District of California

agrees with *Rajamin* and the weight of authority which finds that an assignment of a mortgage after the mortgage trust has ceased accepting new loans makes the assignment voidable, not void. *Id.*; *see also Banares*, 2014 WL 985532, at *5 (finding that *Glaski* "relies on the benefits of retaining REMIC status and an unreported New York trial court decision" whereas the majority view "relies on established principles of trust and contract law and New York appellate opinions," and concluding that "assignments were voidable under New York trust law, rather than void"); *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 815 (2016) (applying *Rajamin* to conclude that an untimely assignment to a securitized trust made after the trust's closing date "is merely voidable"). Plaintiffs would therefore lack standing to challenge the assignments.

Plaintiffs' second claim against Ditech must also be dismissed for the additional reason that Plaintiffs have not alleged that Ditech recorded any documents at all. Again, Plaintiffs cannot rely on their conclusory agency and conspiracy allegations to hold Ditech liable for RCS's actions.

Thus, Plaintiffs' second cause of action is dismissed without prejudice.

### iii. Slander of Title

Plaintiffs' third cause of action is for slander of title. Specifically, Plaintiffs allege Defendants recorded the "Assignment of the Deed of Trust, the Substitution of Trustee, and a Notice of Default on title [*sic*] to the Subject Property containing false representations." (FAC ¶ 46.) Under California law, to prove slander of title, a plaintiff must plead and prove: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." *Alpha & Omega Dev., LP v. Whillock Contracting, Inc.*, 200 Cal. App. 4th 656, 664 (2011). Plaintiffs do not identify what specific false representations were contained in these documents.

Defendants argue that this cause of action fails because California Civil Code § 2924(d) expressly states that notice requirements of non-judicial foreclosure sales are privileged communications. (RCS Mot. at 11-12; Ditech Mot. at 7.) Indeed, "lack of privilege is an essential element of the cause of action [for slander of title]." *Hill v. Allan*, 259 Cal. App. 2d 470, 490 (1970).

In opposition, Plaintiffs argue that the FAC alleges malice in the recording of these

documents. (Plfs.' Opp'n to RCS Mot. at 5; Plfs.' Opp'n to Ditech Mot. at 3.) The operative complaint, however, does not allege any facts suggesting that either Defendant acted maliciously by recording the documents. Since Plaintiffs have failed to plead facts to support the existence of malice, Plaintiffs have not shown that the recordation of the documents was not privileged, and the slander of title claim fails.

Moreover, as to Ditech, Plaintiffs have not alleged that Ditech recorded any documents, as each of the challenged documents were recorded prior to Ditech servicing the loan. (FAC ¶¶ 18, 19, 26, 28.) Plaintiff's claim against Ditech fails for this additional reason.

The third cause of action is dismissed against both Defendants without prejudice.

### iv. Fraud

Plaintiffs' fourth cause of action is for fraud. Fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (a plaintiff alleging fraud must state with particularity the circumstances constituting fraud). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Under California law, the elements of fraud are:

> (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages.

*West v. JP Morgan Chase Bank, N.A.*, 21 Cal. App. 4th 780, 792 (2013) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

Here, Plaintiffs allege that Defendants are liable for fraud because they "made false representations to Plaintiffs regarding the loan modification application. These include that Defendants were actively reviewing Plaintiffs' loan modification application and that they would not pursue foreclosure while the evaluation was pending." (FAC ¶ 54.) Plaintiffs' conclusory allegation that Defendants lied about this does not satisfy Rule 9(b)'s heightened pleading

requirements. Plaintiffs fail to specify, for example, which Defendant said what, when these statements were made, and which employees made the statements. Plaintiffs also fail to specify any facts demonstrating that the representations were false, or any actions taken by each Defendant to pursue foreclosure, particularly after RCS's March 7, 2016 acknowledgment of receipt of the loan modification application. Indeed, it is not clear whether Defendants have stopped reviewing or rejected Plaintiffs' loan modification application, as Plaintiffs only allege that they are "unaware of the true status of the loan modification application." (FAC ¶ 31.)

In addition, Plaintiffs fail to plead, with particularity, the damages suffered, and instead rely on boilerplate recitations. In their opposition, Plaintiffs point to their allegation that their reliance on Defendants' statements caused damage to the extent they forewent other financing opportunities.[3] (Plfs.' Opp'n to RCS Mot. at 6; Plfs.' Opp'n to Ditech Mot. at 4.) Plaintiffs rely on *West* for the proposition that foregoing alternative solutions is a cognizable damage in the foreclosure context. (*Id.*) *West*, however, is distinguishable. There, the court found that the servicer's misrepresentation that no foreclosure sale was scheduled caused the plaintiff to forgo taking legal action to stop the imminent foreclosure sale. 214 Cal. App. 4th at 795 (sale occurred two days after the plaintiff was told that there was no sale scheduled). Here, Plaintiffs hired counsel to stave off foreclosure, are still in possession of the property, and there is no sale currently scheduled.

Accordingly, Plaintiffs' fraud claim is dismissed without prejudice.

### v. Promissory Estoppel

Plaintiffs' fifth cause of action is for promissory estoppel. Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Kajima/Ray Wilson v. L.A. Cty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (internal quotation omitted). California has adopted

---

[3] Plaintiffs also argue that they suffered other damages such as reduced creditworthiness and increased late fees, neither of which are mentioned in the complaint. (*See* FAC ¶¶ 58, 62.) The Court also notes that at the time the notice of default was recorded, Plaintiffs already had a significant past-due balance of $266,560.58 which, no doubt, impacted their creditworthiness before any action was taken by RCS.

13

1   the Restatement's view on promissory estoppel claims. *US Ecology, Inc. v. State*, 129 Cal. App.
2   4th 887, 901 (2005). Thus, the elements of a promissory estoppel claim are "(1) a promise clear
3   and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the]
4   reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be
5   injured by his reliance." *Id.* (citation omitted).

6       Here, Plaintiffs allege that Defendants "falsely promised that Defendants were actively
7   reviewing Plaintiffs' loan modification application, would provide Plaintiffs with a loan
8   modification if they qualified for one and would not pursue foreclosure while a loan modification
9   evaluation was pending." (FAC ¶ 66.) Plaintiffs further allege that "Defendants did not intend to
10  offer Plaintiffs any relief or modification." (FAC ¶ 67.)

11      In their motions to dismiss, Defendants argue that Plaintiffs' promissory estoppel claim is
12  subject to dismissal on the grounds that they cannot plead a prima facie case. (RCS Mot. at 14-15;
13  Ditech Mot. at 9-10.) Specifically, both Defendants argue that Plaintiffs have not alleged any
14  specific action taken by Defendants, and that the promise was only that they would provide a
15  modification if Plaintiffs qualified. (RCS Mot. at 14; Ditech Mot. at 9.) Thus, Defendants argue
16  that Plaintiffs cannot allege that there was detrimental reliance on the review of the loan
17  modification application because there was no guarantee that a modification would be offered.
18  (RCS Mot. at 15; Ditech Mot. at 10.)

19      Plaintiffs have not specified which Defendants made the alleged promises to review the
20  loan modification application and that Plaintiffs would be provided with a loan modification if
21  they qualified for one. In addition, to sustain a promissory estoppel cause of action, Plaintiffs'
22  reliance has to be both reasonable and foreseeable, and they must have suffered an injury as a
23  result of that reliance. Plaintiffs allege no facts to show they were qualified for a loan
24  modification, or that Defendants have even denied them a loan modification. Furthermore, the
25  Court finds that Plaintiffs have failed to identify damages sustained other than that they allegedly
26  "refrained from obtaining the other alternatives to remedy their situation including obtaining
27  alternative financing available to them," and that they "spent money and sweat equity improving
28  the Subject Property in the belief that they were actually being evaluated for a loan modification."

14

1   (FAC ¶ 69.) Plaintiffs do not identify what the source of alternative financing was or why they
2   have not since obtained such financing. Plaintiffs also do not identify what money was spent on
3   what improvements. Accordingly, Plaintiff's cause of action for promissory estoppel is dismissed
4   without prejudice.

### vi. Negligence and Negligence Per Se

Plaintiffs' sixth cause of action is for negligence and negligence per se. Under California law, to prove negligence a plaintiff must plead and prove: (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages. *Palm v. United States*, 835 F. Supp. 512, 520 (N.D. Cal. 1993). Generally, lenders do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *Nymark v. Hearth Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991); *see also Rijhwani v. Wells Fargo Home Mortg., Inc.*, C 13-5881 LB, 2014 890016, at *14 (N.D. Cal. Mar. 3, 2014).

Plaintiffs allege that Defendants owed a duty of care to Plaintiffs in complying with California Civil Code § 2924.17 (recordation of accurate title documents) and § 2923.6 (prohibition on dual-tracking). (FAC ¶ 80.)

In their motions to dismiss, Defendants argue that they do not owe Plaintiffs a duty of care as their loan servicers. (RCS Mot. at 16; Ditech Mot. at 11.) Furthermore, RCS argues that Plaintiffs have failed to allege that RCS mishandled the documents, or that Plaintiffs suffered actionable damages. (RCS Mot. at 17-18.)

In opposition, Plaintiffs contend Defendants had a duty of care in processing the loan modification application. (Plfs.' Opp'n to RCS Mot. at 8; Plfs.' Opp'n to Ditech Mot. at 6.) Plaintiffs further argue that they have alleged clear conduct in violation of Civil Code §§ 2923.6 and 2924.17. (*Id.*)

Federal district courts in California are divided on when lenders owe a duty of care to borrowers in the context of the submission of loan modification applications and negotiations related to loan modifications. *See Penermon*, 47 F. Supp. 3d at 1001; *Rijhwani*, 2014 WL 890016,

1  at *15-16. Once Defendants provided Plaintiffs with a loan modification application and asked
2  them to submit supporting documentation, and they did so, "Defendant[s] undertook the activity of
3  processing Plaintiff's loan modification request. Having undertaken that task, [they] owed
4  Plaintiff a duty to exercise ordinary care in carrying out the task." *Penermon*, 47 F. Supp. 3d at
5  1001 (quoting *Garcia v. Ocwen Loan Servicing, LLC*, C 10-0290 PVT, 2010 WL 1881098, at *4
6  (N.D. Cal. May 10, 2010); *see also Rijhwani*, 2014 WL 890016, at *16. In order to determine
7  "whether a financial institution owes a duty of care to a borrower-client," courts must balance the
8  following non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Nymark*, 231 Cal. App. 3d at 1098 (internal quotations and citations omitted).

In the processing of a loan modification application, the transaction is unquestionably intended to affect Plaintiffs, as the decision would determine whether or not they could keep their home. *Penermon*, 47 F. Supp. 3d at 1002. Second, the potential harm from mishandling the application is readily foreseeable as it is the loss of an opportunity to keep their home. *Id.* Third, the injury to Plaintiffs is certain, as Plaintiffs could lose the opportunity to potentially modify their loan and their home could be sold. *Id.* Fourth, there would be a close connection between Defendants' conduct of allegedly not processing the application and the pending foreclosure of Plaintiffs' home. *Id.* Fifth, whether or not moral blame attaches to Defendants' conduct is unclear at this state of the litigation, but the uncertainty is insufficient to find that there was no duty of care. *Id.*; *see also Garcia,* 2010 WL 1881098, at *3. Sixth, California's enactment of HBOR and the federal government's home owner assistance programs, such as HAMP, shows the existence of the public policy of preventing future harm to borrowers caught in the foreclosure crisis.

Plaintiffs do not allege any facts, however, to support their contention that Defendants breached the duty of care. With respect to processing the loan modification application, Plaintiffs have alleged no facts except that they are unaware of the status of the loan modification

16

1  application. (FAC ¶ 31.) As for Defendants' failure to comply with § 2924.17 and § 2923.6, as

2  discussed above, Plaintiffs have failed to allege sufficient facts to show there was dual tracking or

3  that Plaintiffs have standing to challenge the assignments. Further, Plaintiffs again fail to identify

4  what each Defendant did, instead grouping them together. Accordingly, this cause of action is

5  dismissed without prejudice.

### vii.   Business and Professions Code § 17200

Plaintiffs' final cause of action is for fraudulent, unlawful, and unfair practices in violation of Business and Professions Code § 17200 et seq. Section 17200 concerns unfair competition and prohibited activities and states that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). In order to state a claim under the UCL, Plaintiff must identify an underlying statute that Defendants violated. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (no § 17200 liability "for committing 'unlawful business practices' without having violated another law"). A business practice is unlawful in violation of the UCL if it violates another state or federal law; the UCL "borrowers" violations of other laws and treats them as independently actionable. *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

Plaintiffs allege that Defendants engaged in fraudulent business practices, including the false representations contained with the recorded documents, as well as "the initiation and continuance of the foreclosure process." (FAC ¶ 87.) Plaintiffs further allege Defendants engaged in statutory violations (presumably Civil Code §§ 2923.6 and 2924.17), and unfair business practices by violating laws designed to prevent foreclosure (presumably Civil Code § 2923.6). (FAC ¶¶ 88-89.)

As discussed above, Plaintiffs cannot show that Defendants' actions were unlawful. In order to state a claim under the UCL, Plaintiffs must identify an underlying statute that Defendants violated. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (no § 17200 liability for committing 'unlawful business practices' without having violated another law").

17

Plaintiffs identify §§ 2923.6 and 2924.17 as the underlying statutes; as discussed above, Plaintiffs' § 2923.6 cause of action is inadequately pled, and there may be an issue of standing to challenge the assignments.

Additionally, Plaintiff cannot show that Defendants' actions were fraudulent. A business practice is fraudulent if members of the public are likely to be deceived based on the effect it would have on a reasonable consumer. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012). Here, Plaintiffs fail to identify with any specificity the actions that were fraudulent, or how Plaintiffs or the public were likely to be deceived. Additionally, as discussed above, Plaintiffs must satisfy the heightened fraud pleading requirements, which they failed to do.

Finally, Plaintiffs cannot show that Defendants' actions were unfair. Under the unfairness prong, Plaintiffs must allege conduct that is either tied to, or violates, a "legislatively declared policy," or is such that the "utility of the conduct outweighs the gravity of the harm to the alleged victims." *Lozano*, 504 F.3d at 736. "Any claims of unfairness under the UCL should be defined in connection with a legislatively declared policy." *Schall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166-67 (2000). Here, Plaintiffs make conclusory statements as to how Defendants' actions were unfair by violating laws and underlying policies designed to prevent foreclosures when possible by requiring lenders and servicers to engage in "honest foreclosure prevention efforts." (FAC ¶ 89.) Plaintiffs have generally failed to allege any facts showing a violation of statutes or policies.

Additionally, RCS argues that Plaintiffs' claim fails because they have not pled injury in fact. (RCS Mot. at 18.) To bring a UCL claim, Plaintiffs must allege that they have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiffs' allegations here, however, are conclusory, as they only allege that they "lost money and/or property as a result of these unlawful, unfair, and fraudulent business practices." (FAC ¶ 90.) Such conclusory statements are insufficient; Plaintiffs must identify the actual damages and how the alleged violations caused the injury-in-fact. *See Hosseini v. Wells Fargo Bank, N.A.*, No. C-13-2066 DMR, 2013 WL 4279632, at *8 (N.D. Cal. Aug. 9, 2013).

Accordingly, Plaintiffs' seventh cause of action is dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss Plaintiff's First Amended Complaint with leave to amend. Plaintiff has thirty (30) days from the date of this order to file a Second Amended Complaint.

IT IS SO ORDERED.

Dated: October 6, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge

19